FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2019 APR -3  AM 9:36

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

JAMES SEAMAN, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.

Case No.: 3:19-cv-373-J-39JRK

COSTA DEL MAR, INC.,
a Florida corporation,

JURY TRIAL DEMANDED

    Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff James Seaman ("Plaintiff") brings this action individually and on behalf of a Plaintiff consumer class. In support, Plaintiff alleges as follows:

### INTRODUCTION

1. Costa Del Mar, Inc. ("Costa") aggressively promotes and advertises its sunglasses as being "backed for life," and touts its sunglasses warranty as "the best in the industry," with "no gimmicks" and "no disclaimers." On the side of every box of non-prescription, non-promotional Costa sunglasses sold during the relevant class period, Costa proudly warranted: "[I]f our sunglasses are damaged by accident, normal wear and tear, or misuse, we replace scratched lenses, frames, and other parts <u>for a nominal fee</u>." These claims are false. Consumers who purchased sunglasses during the class period are not charged a "nominal" fee for damages due to accident, normal wear and tear, or misuse, but are instead charged far higher amounts, such as $89.00 for replacement glass lenses, $69.00 for replacement plastic lenses, or $49.00 for replacement frames, along with shipping and handling fees.

2. Costa's advertised promise to repair damaged sunglasses "<u>for a nominal fee</u>" is false and deceptive, designed to lure consumers into paying a premium for sunglasses with a "rock solid"

1

warranty against damage due to accident, normal wear and tear, or misuse, only for consumers to later discover the bait-and-switch. Costa's repair policies and charges are likewise deceptive and unfair. Unfortunately, Costa's "no gimmicks" warranty is just that – a gimmick – designed to trick consumers and maximize revenue for Costa's repair center at the expense of Costa's customers.

3. As a consequence of Costa's deceptive practices, Plaintiff and the consumer class members purchased Costa sunglasses under the false impression that their sunglasses are protected for life against damage due to accident, normal wear and tear, or misuse. Further, Plaintiff and the class members have been damaged because Costa charged, and they paid, far more than a "nominal fee" to repair their sunglasses.

4. Significantly, each consumer has been exposed to the same material misrepresentations and omissions, which are prominently displayed on the product packaging for Costa's sunglasses, prior to purchasing the product.

5. Plaintiff now brings this deceptive trade practices case pursuant to Federal Rule of Civil Procedure 23 on behalf of a nationwide class of Costa sunglass purchasers (excluding Florida purchasers, whose claims are being pursued in a separate lawsuit). Plaintiff, on behalf of the class, seeks injunctive relief and damages, including costs of suit, interest, and reasonable attorneys' fees, for Costa's false, deceptive, and unfair warranty.

6. Plaintiff has retained the law firm of Holland & Knight LLP to represent him and the class, and such firm is entitled under applicable law to seek attorneys' fees from Costa as provided herein.

**PARTIES, JURISDICTION AND VENUE**

7. Plaintiff James Seaman is a citizen of Glynn County, Georgia.

8. Costa is a corporation incorporated under the laws of the State of Florida, with its principal place of business in Daytona Beach, Florida. Accordingly, Costa is deemed to be a citizen of the State of Florida.

9. Costa is "the fourth largest and fastest growing sunglass brand in America." https://www.costadelmar.com/us/en/costa-careers/careers-landing.html (last visited March 21, 2019).

10. Costa conducts business throughout the state of Florida and, specifically, within the Middle District of Florida. Costa has received and continues to receive substantial revenue and profits in the Middle District of Florida and throughout the state of Florida.

11. Upon information and reasonable belief, the proposed class consists of tens of thousands of members from states other than Florida. In the aggregate, these proposed class members seek over $5,000,000 in damages, exclusive of costs and interest.

12. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Costa resides within this district and a substantial part of the events and omissions giving rise to these claims occurred within this district.

14. All conditions precedent to the institution and maintenance of this action have been satisfied or waived.

## FACTUAL ALLEGATIONS

### *Costa's Brand Image: Quality Products and a "No Gimmicks" Warranty*

15. Costa is in the business of manufacturing, marketing, and selling sunglasses. Costa sells a variety of types of sunglasses, including its regular (plano) sunglasses, limited edition sunglasses, special collection sunglasses, and prescription sunglasses.

16. Costa advertises itself as "the leading manufacturer of the world's best, polarized performance sunglasses," and states that it creates "the highest quality, best performing sunglasses." https://www.costadelmar.com/us/en/costa-careers/careers-landing.html (last visited March 21, 2019).

17. Costa touts itself as "the best value available in the sunglass industry," due to a combination of its high product quality and its "rock solid" sunglasses warranty.

18. During the class period, Costa sunglasses were marketed and intended to be sold in a uniform Costa box, upon which Costa prominently printed the below warranty:

> **BACKED FOR LIFE.**
>
> We stand behind our craftsmanship with a rock solid Limited Lifetime Warranty against manufacturer's defects. <u>And if our sunglasses are damaged by accident, normal wear and tear, or misuse, we replace scratched lenses, frames, and other parts for a nominal fee</u>. Our product quality, backed by our Limited Lifetime Warranty, makes Costa Sunglasses the best value available in the sunglass industry today. No other manufacturer offers a combination that even comes close.



19. On the box, one side panel described "**WHAT MAKES THEM COSTAS?**" The final characteristic listed as "making them Costas" is that the glasses are "backed by our lifetime warranty." At that statement, there is an arrow which directs the observer to the opposite panel of the box where the nominal fee statement quoted above is presented.

20. During the class period, Costa's in-store displays stressed that Costa's sunglasses are "backed for life," and advertised Costa's warranty as "[t]he best in the industry," with **no gimmicks** and **no disclaimers**:

**BACKED FOR LIFE**
The best in the industry. No gimmicks.
No disclaimers. Just an unwaivering
confidence in our product.



*Costa's lifetime warranty to repair sunglasses for a "nominal fee" is part of every consumer's bargain.*

21. Costa's lifetime warranty is an important part of the Costa brand, and Costa believes this lifetime warranty sets it apart from its competitors.

22. During the class period, Costa's lifetime warranty included its promise to replace damaged parts for a nominal fee.

23. Costa knew its customers bought Costa sunglasses because of the lifetime warranty.

24. Costa understood customers had an expectation – based on the language on the box – that any repairs to their Costa sunglasses would be completed for a nominal fee.

25. Each and every box of non-prescription, non-promotional Costa sunglasses distributed during the class period contains this nominal fee repair promise.

26. During the class period, Costa's employees were trained to understand that the nominal fee repair promise was part of the lifetime warranty.

27. During the class period, Costa's retailers were trained to understand that the nominal fee repair promise is an important part of the lifetime warranty, and that accidental damage and normal wear and tear would be repaired by Costa for a nominal fee.

28. During the class period, the nominal fee repair promise was uniformly printed on the side of every non-promotional, non-prescription box of Costa sunglasses, and was communicated to Plaintiff and every other member of the class at every point of purchase.

29. Millions of boxes containing the nominal fee repair promise were delivered to retailers and consumers during the class period.

30. The boxes were intended to be maintained by the retailers and provided to customers at the point of purchase.

31. The nominal fee repair promise was available to every consumer because (in addition to it being printed on every box during the class period), any purchaser could view the Costa box online, and on hundreds of websites.

32. During the class period, Costa sunglasses were sent to customers and retailers in the box and were intended to be provided to the consumer in the box:

   a. Costa had a policy to distribute its sunglasses in the box.

   b. Costa's online direct sunglass sales were shipped from Costa facilities to the end customer in the box.

   c. Costa sunglasses were shipped from Costa facilities to retailers in the box.

   d. Third party retailers selling Costa sunglasses online – including Dick's Sporting Goods, Academy Sports, and Amazon – shipped Costa sunglasses to end customers in the box.

33. During the class period, the boxes were designed to go on display at the retailer. When lined up one-by-one in a row, the boxes were designed to spell "COSTA."

34. During the class period, Costa intended for the statements on the box – including the nominal fee repair promise – to be part of every customer's deal, no matter where they purchased the sunglasses, and no matter whether or not they actually received the box.

35. When customers send their sunglasses to Costa for repair, Costa honors the repair promise on the box (albeit for a price Plaintiff contends is *not* nominal), regardless of whether the customer received the box.

36. Costa does not require proof of purchase or a receipt for a customer to have his or her Costa sunglasses repaired.

37. Costa does not require customers to prove that they received the box in order to have their Costa sunglasses repaired.

### *Plaintiff Seaman Purchased a Pair of Costa Triple Tail Sunglasses in St. Simons Island, Georgia*

38. Plaintiff Seaman purchased a pair of Costa sunglasses for $259.00 from Ocean Motion in St. Simons Island, Georgia.

39. In 2016, the frames and arm of Plaintiff Seaman's sunglasses were accidentally damaged.

40. In accordance with Costa's standard repair protocol, Plaintiff Seaman filled out the online repair form available at www.costadelmar.com and paid to mail his sunglasses to Costa for repair.

41. Costa received Plaintiff Seaman's sunglasses and, after inspecting the sunglasses, advised Plaintiff Seaman that he would be required to pay for replacement lenses at a cost of $89 and replacement frames at a cost of $49, plus taxes and shipping and handling, for a total cost of $149.95.

42. In August 2016, Costa charged Plaintiff Seaman $149.95 in repair and shipping costs, which was far more than the "nominal fee" promised by Costa.

### *The "Gimmick": Costa's Bait-and-Switch Warranty*

43. Costa advertises that its sunglasses are durable, built to last, and made to withstand extreme and intense conditions.

44. Costa markets itself to consumers as "the best value available in the sunglass industry," due to a combination of its high product quality and its "rock solid" sunglasses warranty.

45. But while Costa touts the high quality of its sunglasses, upon information and belief, Costa's frames and lenses are manufactured overseas, primarily in China, Taiwan, and Japan.

46. And Costa knows that its sunglasses have a significantly higher failure rate than its competitors.

47. Further, Costa's warranty to replace sunglasses damaged by "accident, normal wear and tear, or misuse ... for a nominal fee" is false, deceptive, and unfair.

48. Black's Law Dictionary defines the term "nominal" as: "(Of a price or amount) trifling, esp. as compared to what would be expected <the lamp sold for a nominal price of ten cents>." *See* Black's Law Dictionary 1148 (9th ed. 2009).

49. Merriam-Webster defines the term "nominal" as "being so small or trivial as to be a mere token." *See* "Nominal," Merriam-Webster.com (last accessed July 20, 2017).

50. The charges imposed by Costa are not nominal.

51. In addition to the substantial repair charges, customers whose sunglasses have been broken by accident, misuse, or normal wear and tear are also charged a $9.95 "shipping" fee.

52. During the class period, Costa did not disclose the repair charges or the $9.95 fee to customers on the box or at the point of purchase.

53. During the class period, when a consumer called the phone number listed on the Costa sunglass box (1.855.MYCOSTA, or 1.855.692.6782), the recording instructed that Costa does not provide repair assessments over the phone. Accordingly, customers must pay to ship their sunglasses to Costa before Costa will provide a repair assessment or disclose the cost of the repairs.

54. During the class period, Costa did not display its allegedly "nominal" repair costs on its website. And in general (unless the telephone operator violates Costa's internal policy), a consumer was not able to receive pricing or repair information over the phone. Thus, discovery of the true nature and extent of Costa's deception requires owning a pair of Costas and sending them in for repair. Only after paying to ship and relinquishing possession of the sunglasses to Costa does a customer learn that he or she has been duped.

55. Upon information and belief, over time and without changing its "nominal fee" warranty, Costa inflated its repair charges so that they were far above a nominal amount and for the purpose of generating a significant profit from repairs.

56. Costa has profited enormously from its falsely-marketed products and its carefully-orchestrated label and image.

57. As an immediate, direct, and proximate result of Costa's false warranty, Costa injured Plaintiff and the class members in that they:

   a. Did not receive the benefit of the repair warranty made by Costa; and

   b. Paid more than a "nominal" fee for repairs.

58. Costa has been here before. Recently, the Honorable Adrian G. Soud, Circuit Judge, Fourth Judicial Circuit of Florida, granted Plaintiff's Motion for Class Certification and certified two classes of Florida consumers in the action styled *Brendan C. Haney v. Costa Del Mar, Inc.*, Case No. 16-2017-CA-4794 [hereinafter, *Haney*]. Plaintiff in *Haney* asserted claims against Costa for breach of warranty and violations of Florida's Deceptive and Unfair Trade

Practices Act ("FDUTPA"), arising out of Costa's practice of charging exorbitant fees for consumers to obtain a repair or replacement of their sunglasses damaged by "accident, normal wear and tear, or misuse," despite Costa's promise that it would make these repairs for a "nominal fee."

59.   After the filing of the *Haney* action and apparently recognizing that its "nominal fee" language precludes it from charging more than a nominal fee for repairs, Costa changed its packaging and promotional materials so that the nominal fee repair promise no longer appears on Costa sunglass boxes or promotional materials.

60.   As of late January or early February 2018, Costa utilized a sticker to cover up the nominal fee promise on the side of every box leaving Costa's facility.  Those stickers were intended to and, in fact, did cover the nominal fee repair warranty on the box.

61.   In approximately March or April 2018, Costa changed its sunglass boxes to remove the nominal fee repair warranty altogether.

## CLASS REPRESENTATION ALLEGATIONS

62.   Plaintiff brings this action both on behalf of himself and as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of the following class members (the "Class"):

> **COUNT I - VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FLA. STAT. §§ 501.201 et seq.):**
>
> All citizens of the United States who purchased non-prescription, non-promotional Costa sunglasses before January 1, 2018 and who were charged a fee by Costa, from four years prior to the date of the filing of this Complaint to the present, to repair or replace components of their sunglasses that Costa determined were damaged as a result of accident, normal wear and tear, or misuse.

Excluded from the Class are: (1) citizens of the State of Florida;[1] (2) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (3) the judge to whom this case is assigned and the judge's staff.

63.  Plaintiff reserves the right to amend the Class definition if further information and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified, including but not limited to the creation of subclasses, if necessary.

64.  Plaintiff does not know the exact number of Class members because such information is in the exclusive control of Costa. However, upon information and belief, Costa has sold millions of pairs of sunglasses during the class period and based on the annual sales and popularity of Costa sunglasses, and their poor quality that necessitates an above-average number of repairs, it is readily apparent that the number of consumers in the Class is so large as to make joinder impracticable, if not impossible.

65.  Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

66.  **Numerosity – Federal Rule of Civil Procedure 23(a)(1):** The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff believes that there are tens of thousands of members of the Class, the precise number of Class members is unknown to Plaintiff, but may be ascertained from Costa's books and records.

---

[1] The *Haney* court certified two classes of Florida consumers on similar facts.

67. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**: This action involves common questions of law and fact which predominate over any questions affecting individual Class members including, without limitation:

   a. Whether Costa engaged in the conduct alleged herein;

   b. Whether the amount charged by Costa to repair sunglasses damaged by accident, normal wear and tear, or misuse is "nominal";

   c. Whether Costa engaged in deceptive and unfair trade practices by claiming Costa will repair sunglasses damaged due to accident, normal wear and tear, or misuse for a nominal fee;

   d. Whether Plaintiff and the other members of the Class were injured by Costa's conduct and, if so, the appropriate class-wide measure of damages for Class members; and

   e. The scope of any injunctive, declaratory, and non-monetary relief to which Plaintiff and the other Class members are entitled.

68. **Typicality – Federal Rule of Civil Procedure 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class because, among other things, all Class members were comparably injured through Costa's wrongful conduct as described herein. All Class members purchased Costa sunglasses purportedly backed by Costa's claim that it would repair sunglasses damaged due to accident, normal wear and tear, or misuse for a nominal fee. Each class member paid more than a nominal amount to have their sunglasses repaired and the injuries of each Class member were caused directly by Costa's wrongful conduct. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

69. **Adequacy – Federal Rule of Civil Procedure 23(a)(4)**: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class. Neither Plaintiff nor counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the members of the Class. Plaintiff and his counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiff and his counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by seeking the maximum possible recovery for the Class.

70. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)**: Costa has acted or refused to act on grounds generally applicable to Plaintiff and other members of the Class, thereby making appropriate final injunctive and declaratory relief, as described below, with respect to the Class as a whole.

71. **Superiority – Federal Rule of Civil Procedure 23(b)(3)**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Costa. As a result, it would be impracticable for the Class members to individually seek redress for Costa's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefit of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT (FLA. STAT. §§ 501.201 *et seq.*)

72. Plaintiff, individually and on behalf of all others similarly situated, realleges and incorporates the allegations of paragraphs 1 through 71 above.

73. This cause of action is brought on behalf of the Class pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* (the "Act").

74. The stated purpose of the Act is to "protect the consuming public ... from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

75. Plaintiff and all Class members are "consumers," and the transactions at issue in this Complaint constitute "trade or commerce" as defined by Fla. Stat. § 501.203(7) and (8).

76. Costa violated and continues to violate the Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business.

77. Specifically, during the class period, Costa prominently advertised the terms and conditions of its warranty on the side of each box of non-promotional, non-prescription sunglasses. The box stated: "[I]f our sunglasses are damaged by accident, normal wear and tear, or misuse, we replace scratched lenses, frames, and other parts for a nominal fee."

78. Contrary to those representations, Costa does not repair sunglasses damaged by accident, normal wear and tear, or misuse for a nominal fee.

79. During the class period, Costa did not provide pricing information to customers at the point of purchase. It is Costa's policy not to provide repair assessments over the phone. And Costa does not display repair costs on its website. Thus, a customer cannot learn the true cost of Costa's repair services until the customer mails its sunglasses to Costa (at the customer's expense).

80. Costa's acts and omissions are a violation of the Act because Costa's claim that it will repair sunglasses damaged by misuse for a "nominal" fee is deceptive, unfair, unconscionable, and likely to mislead a reasonable consumer, and its practice of charging an amount for repairs that is far more than nominal is likewise deceptive, unfair, and unconscionable.

81. A reasonable consumer would believe that a "nominal" fee would be no more than a few dollars, and certainly far less than Costa charges.

82. Plaintiff and the other Class members had no way of reasonably knowing at the time of purchase that the sunglasses they purchased did not have the warranty that was marketed and advertised by Costa. Thus, they could not have reasonably avoided the injury each of them suffered.

83. As a direct and proximate cause of the violations herein, Plaintiff and the Class members have suffered injury in fact, actual damages, and have lost money as a result of Costa's unlawful, unfair, and fraudulent conduct.

84. Costa's deceptive and unfair trade practices have resulted in damages to Plaintiff and other members of the Class.

85. Costa's offending conduct occurred predominately within Florida such that the application of the Act to a nationwide class of consumers is proper. Specifically, during the class period:

    a. Costa's headquarters is in Florida;

    b. Costa sunglasses are manufactured in Florida and distributed out of Florida;

    c. Costa's misleading and deceptive "nominal fee" warranty was printed on the sunglass box, and these sunglass boxes were printed and shipped to customers and distributors from Florida;

    d. Costa directed its false and misleading communications and advertisements from Florida to consumers around the country;

    e. Costa required each and every consumer to send their sunglasses to Costa's repair center in Florida for review and analysis;

    f. Upon assessment by Costa's repair technicians, Costa contacted customers to advise of the significant repair costs via email and phone from its repair center in Florida;

    g. Costa conducted the repairs in Florida;

    h. Costa charged customers a fee for the repairs in Florida; and

    i. After the repairs were completed, Costa mailed the repaired sunglasses to customers from its repair center in Florida.

86. Pursuant to Section 501.211(1), Florida Statutes, Plaintiff and the Class members seek a declaration that Defendant's conduct is in violation of applicable law.

87. Pursuant to Section 501.211(1), Florida Statutes, Plaintiff and the Class members seek injunctive relief prohibiting Costa from charging any above-nominal fees to the Class members for future repairs to their Costa sunglasses. Injunctive relief is necessary and proper because Plaintiff and the Class members have been aggrieved by Costa's unfair and deceptive acts and, unless so enjoined, Costa will continue to engage in the deceptive actions explained herein.

**WHEREFORE**, Plaintiff James Seaman, individually and on behalf of the Class, prays for relief as follows:

    a) An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed the class representative, and that Plaintiff's counsel be appointed counsel for the class;

    b) An order declaring Costa's conduct to be in violation of applicable law and enjoining Costa from pursuing the unlawful acts and practices alleged herein;

c) Compensatory damages, and all other damages allowable under the law, sustained by Plaintiff and the class;

d) Payment of costs of suit herein incurred;

e) Pre-judgment and post-judgment interest at the maximum rate allowable at law on any amounts awarded;

f) Payment of reasonable attorneys' fees pursuant to Sections 501.211(2) and 501.2105, Florida Statutes; and

g) Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated this 3rd day of April, 2019.

                                         **HOLLAND & KNIGHT LLP**

                                         /s/ Peter P. Hargitai
                                         Peter P. Hargitai (FBN 85375)
                                         peter.hargitai@hklaw.com
                                         Joshua H. Roberts (FBN 042029)
                                         joshua.roberts@hklaw.com
                                         Laura B. Renstrom (FBN 108019)
                                         laura.renstrom@hklaw.com
                                         Michael M. Gropper (FBN 105959)
                                         michael.gropper@hklaw.com
                                         50 North Laura Street, Suite 3900
                                         Jacksonville, Florida 32202
                                         Telephone: (904) 353-2000
                                         Facsimile: (904) 358-1872

                                         *Attorneys for Plaintiff James Seaman*